## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| SAVISTA, LLC, | ) | |
| | ) | Civil Action No. 1:23-cv-06445 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GS LABS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### SAVISTA, LLC'S OPPOSITION TO GS LABS, LLC'S MOTION TO DISMISS

Plaintiff Savista, LLC, by and through counsel, hereby opposes Defendant GS Labs, LLC's *Motion to Dismiss or, in the alternative, to Transfer Venue* ("Motion") [Dkt. 15]. The Motion fails.

GS Labs purposefully availed itself of doing business in Illinois. GS Labs opened a testing facility in the Northern District of Illinois. GS Labs then entered a contract that obligated Savista to reach into Illinois on behalf of GS Labs to recover payments for testing at GS Labs' Illinois facility, as well as thousands of payments owed by resident-payors in Illinois. This lawsuit arises from GS Labs' refusal to pay Savista for that work—and centers on the meaning of disputed contract language. Jurisdiction is proper as a result. Venue is proper for the same reasons, and GS Labs lacks the heightened showing needed to overcome the strong deference to a plaintiff's choice of forum because Nebraska is neither more convenient for the parties nor would transfer expedite the case or serve justice. Accordingly, the Court should deny GS Labs' Motion entirely.

### INTRODUCTION

GS Labs and Savista entered a Master Services Agreement ("Agreement") in November 2021. Complaint ¶ 5. Per the Agreement, Savista performed billing services on behalf of GS Labs arising from GS Labs' COVID-19 testing sites nationwide—including in Illinois. *Id.* at ¶¶ 1, 2, 5. As GS Labs admits, at least 418 of the accounts GS Labs hired Savista to pursue came from GS

Labs' brick-and-mortar location in Illinois. Motion Ex. A, Thompson Aff. ¶ 15. The true number of payments connected to Illinois is far greater: 9569 in just the few months before GS Labs breached the Agreement. Ex. A Declaration of Olivia Currin-Britt ("Currin-Britt Aff.") ¶ 9. Savista recovered $3,892,385 for GS Labs on those 9569 accounts tied to Illinois. *Id.*

Undeterred by its physical operations in this district or thousands of claims and millions of dollars recovered from Illinois resident-payors by Savista under the Agreement, GS Labs asserts that jurisdiction and venue are improper in Illinois. Not so. GS Labs purposefully availed itself of the benefits of doing business in Illinois by operating a testing site here. GS Labs then hired Savista to reach into Illinois to pursue thousands of unpaid claims connected to Illinois and GS Labs' testing site in Illinois. GS Labs cannot credibly now argue that a lawsuit arising from its contractual obligation to pay for those very same recovery services falls outside the jurisdiction and venue of courts in Illinois. This Court has jurisdiction over GS Labs and should deny GS Labs' Motion.

## FACTS RELEVANT TO JURISDICTION AND VENUE

In 2021, GS Labs opened a brick-and-mortar facility for COVID-19 testing in Warrenville, Illinois. Currin-Britt Aff. ¶ 5; Thompson Aff. ¶ 8. GS Labs also entered the Agreement with Savista in 2021. Complaint ¶ 5; Thompson Aff. ¶ 3. Under the Agreement, Savista performed billing and recovery services on accounts from GS Labs' testing sites nationwide, as well as thousands of claims owed by Illinois residents—patients who received testing in Illinois and insurance companies in Illinois. Currin-Britt Aff. ¶¶ 4-5. That work required Savista to pursue Illinois residents and Illinois-based insurance companies on GS Labs' behalf—including Blue Cross and Blue Shield of Illinois (BCBSIL) in Chicago, Illinois. *Id.* ¶¶ 7-8. In other words, Savista performed "billing and accounts receivable services arising from GS Labs' business activities in Illinois" and "negotiate[d] directly with payors in Illinois on behalf of GS Labs." Complaint ¶ 5.

2

Savista fulfilled its contractual duties to GS Labs by obtaining significant recoveries from Illinois. *Id.* ¶ 9. For example, during the months before GS Labs breached the Agreement (April to July 2023), Savista netted $3,892,385 from 9569 accounts connected to payors in Illinois. *Id.* Even by GS Labs' Motion—which vastly undercounts accounts connected to Illinois—Savista was hired to pursue 418 Illinois accounts and recovered on 82 before GS Labs breached the Agreement. Thompson Aff. ¶ 15. Either way, Savista's "performance . . . related to the relevant contract were substantially connected with Illinois" and "the services and performance of the contract on which this lawsuit is based are substantially connected to this district…" Complaint ¶¶ 3-4.

## LAW AND ARGUMENT

Whether this Court has jurisdiction over GS Labs "is determined by reference to the Due Process Clause of the Fourteenth Amendment and Illinois's state long-arm statute," which "permits the exercise of jurisdiction to the full extent permitted by the U.S. Constitution." *Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 642 (N.D. Ill. 2017). The "key question is therefore whether [a] defendant[ ] ha[s] sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Id.* citing *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). Put differently, "each defendant must have purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there." *Id.* quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

Illinois' long-arm statute specifically extends jurisdiction where a defendant "in person or through an agent does any of the acts hereinafter enumerated: (1) The transaction of any business within this State . . . (7) The making or performance of any contract or promise substantially connected with this State. . . " 735 ILCS 5/2-209(a)(1), (7). Jurisdiction is also proper "against any person who . . . [i]s a natural person or corporation doing business within this State." 735 ILCS

3

5/2-209(b)(4). On the record before the Court, GS Labs operated a physical location in Illinois and remains registered to do business in Illinois. GS Labs hired Savista to reach into Illinois for money owed to GS Labs by Illinois residents. Such extended contact with Illinois is sufficient.

Still, if "a defendant moves to dismiss under Rule 12(b)(2), the plaintiff has the burden of demonstrating personal jurisdiction." *Lowe*, 233 F. Supp. 3d at 640. When, as here, "the district court rules on a defendant's motion to dismiss based on the submission of written materials . . . the plaintiff 'need only make out a *prima facie* case of personal jurisdiction.'" *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Plaintiff has made out a *prima facie* case—namely the substantial connection of this dispute to GS Labs' physical presence in Illinois and its decision to hire Savista to direct extensive efforts toward Illinois residents.

Moreover, on the *prima facie* standard, a plaintiff "'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Id.* quoting *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983); *Lowe*, 233 F. Supp. 3d at 640 ("The court must resolve any conflicts in the affidavits and supporting materials in the plaintiff's favor."); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997) (same). Allegations in the Complaint and affidavits by both parties—*i.e.*, that GS Labs operated in Illinois and contracted Savista to reach into Illinois for millions of dollars from Illinois residents based on GS Labs' operations in Illinois—meet the *prima facie* standard. *Lowe*, 233 F. Supp. 3d at 642. Regardless, the Court must resolve any disputes related to same in favor of Savista. *Id.* at 640.

I.    **GS Labs Has Sufficient Purposeful Contacts to Support Jurisdiction.**

A court has specific personal jurisdiction over a defendant "where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's

4

forum-related activities." *Tamburo*, 601 F.3d at 702. Thus, "personal jurisdiction in breach-of-contract actions often turns on whether the defendant 'purposefully availed' himself of the privilege of conducting business or engaging in a transaction in the forum state." *Id.* quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). Here, there is no credible debate that GS Labs availed itself of the privilege of conducting business in Illinois and that this case arose from GS Labs' transactions in Illinois as well transactions with Illinois residents that GS Labs hired Savista to conduct on its behalf.

To start, GS Labs purposefully availed itself of the privilege of conducting business in Illinois by operating a COVID-19 testing site in Warrenville, Illinois. Thompson Aff. ¶ 8. Operating a business in the jurisdiction is purposeful availment. Full stop. *See Kothawala v. Whole Leaf, LLC*, 2023 IL App (1st) 210972, ¶ 33 *appeal denied*, 221 N.E.3d 348 (Ill. 2023) ("The long and short is that plaintiff need only show that [defendant] has directed some commercial activity at Illinois" to satisfy the purposeful-availment prong; affirming denial of motion to dismiss for lack of personal jurisdiction). GS Labs conducted in-person medical testing in Illinois—testing a substantial number of Illinois patients. *See* Currin-Britt Aff. ¶¶ 7-9. GS Labs then hired Savista to recover payments for that testing. Such contacts are more than sufficient, *see Kothawala*, 2023 IL App (1st) 210972, ¶ 33, and relate to the performance of a contract substantially connected with Illinois. *See, e.g.,* 735 ILCS 5/2-209(a)(7).

GS Labs admits that 418 accounts for patients tested in Illinois were part of Savista's work under the Agreement. Thompson Aff. ¶¶ 9, 15. GS Labs also admits that Savista "recovered additional payment for 82 out of the 418 Illinois accounts." *Id.* The true number connected to Illinois is closer to ten thousand—and Savista recovered $3.9 million on those claims in the months before GS Labs breached the Agreement. Currin-Britt Aff. ¶ 9. No matter. It is undisputed that

Savista performed its obligations under the Agreement by providing "billing and accounts receivable services arising from GS Labs' business activities in Illinois," "negotiat[ing] directly with payors in Illinois," and recovering Illinois accounts on GS Labs' behalf. Complaint ¶ 5; Thompson Aff. ¶ 15. Yet GS Labs failed to pay Savista. This case thus stems directly from GS Labs' business operations in Illinois and the monies GS Labs hired Savista to pursue from resident-payors in Illinois. This Court has personal jurisdiction over GS Labs as a result.

In contrast, GS Labs argues that operating a testing site in Illinois is irrelevant because its breach involves not paying for Savista's work on accounts from other states, too—not just for work in Illinois. *See* Motion at 8. GS Labs misses the mark. There is no requirement that every aspect of a contract connect to Illinois. The test is whether GS Labs purposefully directed its activities at Illinois or purposefully availed itself of the privilege of conducting business here. GS Labs has done both. *See, e.g.*, *Kothawala*, 2023 IL App (1st) 210972, ¶ 30 quoting *Burger King*, 471 U.S. at 475 ("where the defendant deliberately has engaged in significant activities within a State…or has created continuing obligations between himself and residents of the forum…he manifestly has availed himself of the privilege of conducting business there."). The "nationwide" recovery GS Labs hired Savista to do involved substantial claims arising from GS Labs' Illinois testing site and Illinois resident-payors Savista pursued for GS Labs. Thompson Aff. ¶¶ 9, 15 (418 accounts); Currin-Britt Aff. ¶ 9 (9569 claims, $3.9 million). That GS Labs formed minimum contacts with many states by also operating sites outside Illinois does not obviate purposeful contacts it formed with Illinois by operating a testing site here and hiring Savista to reach into Illinois for thousands of payments from Illinois residents.

GS Labs' related assertion that its Illinois testing site is "unrelated to the operative facts underlying Savista's Complaint" is irrational. Motion at 8. Savista seeks payment for billing and

6

recovery services it provided in Illinois based on accounts from GS Labs' Illinois testing site. GS Labs' operations in Illinois are thus central to the services Savista provided under the Agreement and for which Savista now seeks payment. Indeed, both the initial transactions necessitating the Agreement between GS Labs and Savista, as well as the performance of Savista's obligations per the Agreement, are substantially connected to Illinois. Nothing more is required to support personal jurisdiction in this case. *See Lowe*, 233 F. Supp. 3d at 642; 735 ILCS 5/2-209.

GS Labs also argues that it is not subject to personal jurisdiction because payments Savista recovered "from patients who were tested in Illinois…would have been recovered from the patients' insurers, not the patients themselves." Motion at 9. GS Labs points to a distinction without a difference. Whether patients or insurance companies, resident-payors in Illinois are resident-payors in Illinois. And a core insurance company Savista serviced claims for on behalf of GS Labs is an Illinois resident: Blue Cross and Blue Shield of Illinois (BCBSIL). Currin-Britt Aff. ¶¶ 7- 9. BCBSIL is a division of Health Care Service Corporation, a Mutual Legal Reserve Company headquartered in Illinois. *See* Ex. B. In the months before GS Labs breached the Agreement, Savista netted $3.9 million from BCBSIL on 9569 accounts. Currin-Britt Aff. ¶¶ 9. GS Labs hired Savista to reach into Illinois and recover payments from Illinois-based payors as well as patient accounts at GS Labs' Illinois site. That is enough.

Finally, GS Labs argues that payments sent to Savista went to a bank account in California, not Illinois. Invoices to GS Labs listed multiple Illinois addresses for GS Labs to send checks for Savista's services. Ex. C. Aside from GS Labs having multiple payment addresses in Illinois, the billing company it hired (but did not pay), Savista, is registered to do business in Illinois. The fact that GS Labs sent money to California does not alter its fundamental contacts with Illinois or change the relationship GS Labs formed with Illinois by operating a testing site here and hiring

Savista to recover payments from Illinois residents. Regardless of where GS Labs sent money, it operated a testing site in Illinois and entered a contract with Savista that required performance with a substantial connection to Illinois. This Court has jurisdiction over GS Labs.

## II.  The Cases GS Labs Cites Are Inapposite.

GS Labs relies on *J.S.T. Corp.* and *Northern Grain*. Motion at 6-8. GS Labs' reliance is misplaced. GS Labs also mischaracterizes *J.S.T. Corp.* Nor do either *J.S.T. Corp.* or *Northern Grain* involve a party that purposefully availed itself of the benefits of doing business in Illinois as GS Labs has done. Neither *J.S.T. Corp.* nor *Northern Grain* control the outcome in this case.

First, *J.S.T. Corp.* was not a contract case. The plaintiff in *J.S.T. Corp.* asserted trade secret and unjust enrichment claims. *See J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 573 (7th Cir. 2020). Second, GS Labs incorrectly describes *J.S.T. Corp.* as holding that a court lacked jurisdiction even though the defendant had offices in Illinois and manufactured products sold there because its offices and the products were unrelated to the plaintiff's claims. Motion at 6. GS Labs is wrong. None of the defendants in *J.S.T. Corp.* manufactured or sold products in Illinois; their "only link to Illinois [was that they [sold] their connectors to Bosch [in Texas and in China], knowing that the connectors will end up in General Motors cars and parts that are sold in Illinois." *Id.* at 571, 573–74. Those out-of-state, downstream sales did not relate to the plaintiff's claims and were thus too attenuated to support jurisdiction. *Id.* But here, GS Labs hired Savista to pursue Illinois residents in Illinois for payments for testing at GS Labs' site in Illinois—work for which GS Labs refuses to pay. This suit relates directly to business activities by GS Labs in and contracts between GS Labs and Savista with substantial connections to Illinois.

Similarly, *Northern Grain* did not involve a defendant who purposely availed itself of the benefits of doing business in Illinois. In *Northern Grain*, the court held jurisdiction lacking over a Wisconsin farmer who met a grain originator (who worked for Northern Grain's predecessor

8

entity) after traveling to Illinois ***only once*** to attend a trade show. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 496 (7th Cir. 2014). Months after the trade show, the farmer contracted with Northern Grain, an Illinois company, to grow grain in Wisconsin and to deliver it to grain elevators in Wisconsin. There was "no evidence that [the farmer] engaged in any advertising or distribution efforts in Illinois;" he "wasn't actively marketing his grain to other Illinois companies;" the record gave "no indication that [the farmer] knew (or cared) what Northern Grain did with his grain after each sale;" and "virtually everything else about [the farmer's] contractual relationship with Northern Grain was based in Wisconsin." *Id.* at 489, 496. So, the farmer "did not purposefully avail himself of the privilege of conducting business in Illinois" and did not have "sufficient minimum contacts with Illinois." *Id.* at 496. The opposite is true with GS Labs. GS Labs did purposefully avail itself of the benefits of conducting business here. GS Labs set up a brick-and-mortar facility in Illinois. GS Labs hired Savista to help it fully recoup those benefits by pursuing payments tied to Illinois, *i.e.*, payments for testing conducted in Illinois and other amounts owed by resident-payors in Illinois.

### III. Exercising Jurisdiction Over GS Labs Does Not Offend Traditional Notions.

Because GS Labs has sufficient contacts with Illinois, the last step is to consider whether exercising jurisdiction offends traditional notions of fair play and substantial justice. It does not. Factors include "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" *Tamburo*, 601 F.3d at 709. Importantly, "***where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of***

9

*some other considerations would render jurisdiction unreasonable.*" *Burger King*, 471 U.S. at 477 (emphasis added). Such is the case here.

Jurisdiction in this Court comports with traditional notions of fair play and substantial justice. The burden on GS Labs is minimal, given that GS Labs operated a brick-and-mortar facility in this district and remains registered as an active business in Illinois. *See* Ex. E. Savista LLC is an active, registered business in the State of Illinois as well. Ex. D. Savista also has a strong interest in obtaining relief in Illinois because performance of the Agreement required Savista to negotiate with and recover from Illinois-based payors. The State of Illinois has a strong interest in providing a forum for businesses operating here to address contractual disputes arising from their business activities connected to the state and its residents. Allowing this case to proceed in Illinois is the quickest and most convenient way for Savista to obtain relief, *infra* at IV, particularly given the need for this case to be resolved simply by judicial interpretation of disputed contract language. A plaintiff's choice of forum should also be protected, and any dispute related to the facts of such choice resolved in favor of Savista as plaintiff. *See Purdue Rsch. Found.*, 338 F.3d at 782. Therefore, allowing this suit to proceed in Illinois is both just and fair.

**IV. Transfer To Nebraska Is Not Appropriate.**

After contesting jurisdiction, GS Labs asks "that this action be transferred to the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a)." Motion at 1. Transfer under either statute is legal error.

First, "[t]ransfer under § 1406(a) is appropriate only when venue is improperly laid." *In re LimitNone, LLC*, 551 F.3d 572, 575 (7th Cir. 2008). Venue is proper here because this is a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred..." 28 U.S.C.A. § 1391(b)(2). GS Labs operated a testing site in this district. GS Labs hired Savista to pursue hundreds of accounts receivable from patients tested at the site as well as thousands of

10

receivables from other Illinois resident-payors. Savista now seeks payment for its work. Venue is proper in this district within the meaning of § 1391 and as such, transfer under § 1406(a) improper.

Second, a "[c]ourt should only transfer a case under Section 1404(a) when: (1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transfer will serve the convenience of the parties and witnesses; and (4) the transfer will serve the interests of justice." *Nalco Co. v. Env't Mgmt., Inc.*, 694 F. Supp. 2d 994, 998 (N.D. Ill. 2010). Here, the third and fourth factors are missing. Neither the convenience of the parties (*i.e.*, not just the convenience of GS Labs) nor the interests of justice will be served by transferring this case.

When "evaluating the convenience of the parties and witnesses, courts weigh the following factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Nalco Co.*, 694 F. Supp. 2d at 998. None of these factors favor GS Labs. Plus, when a "party moves for transfer, that party bears the burden of establishing that the transferee venue is more convenient." *Id.* And the Court must give deference to Savista's choice of forum: "***A district court grants an automatic degree of deference to a plaintiff's chosen forum for filing a suit such that 'unless the balance strongly favors transfer, the plaintiff's choice of forum should not be disturbed.'***" *Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 960 (N.D. Ill. 2013) quoting *Bousis v. Marriott Int'l, Inc.*, 47 F. Supp. 2d 1004, 1006 (N.D. Ill. 1999) (emphasis added). A such, "***the plaintiff's choice of forum should rarely be disturbed.***" *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 857 (N.D. Ill. 2007) (emphasis added).

Here, Savista's choice of forum deserves deference, particularly given the substantial connection Illinois has to the case. *See Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 643 (7th Cir. 2003) ("There is a strong presumption in favor of the plaintiff's choice of forum."). GS Labs ran

a brick-and-mortar testing facility from this district from which hundreds of the accounts GS Labs contracted Savista to pursue originated—likewise with resident-insurance companies in Illinois from which Savista recovered $3.9 million dollars for GS Labs in the months before GS Labs breached. Currin-Britt Aff. ¶¶ 7-9. Savista now seeks payment for those efforts, which required Savista to pursue monies owed in Illinois and to negotiate directly with Illinois resident-payors, such as Blue Cross and Blue Shield of Illinois. Currin-Britt Aff. ¶¶ 7-9. The first two factors (plaintiff's choice of forum and situs) weigh against transfer as a result.

The next factor is relative ease of access to sources of proof. At best, the relevant records are located in a variety of states besides Nebraska. More likely, all relevant documents are electronically available and easily transferable in digital format regardless. Not to mention that this lawsuit is a simple dispute over the meaning of operative language in a contract. Nebraska does not provide any easier access to sources of records than Illinois—or any other state for that matter. On witnesses, GS Labs exaggerates that witnesses may be in Nebraska, Texas, North Carolina, Kentucky, and India. Motion at 13. Savista rejects the likelihood of needing to call multiple witnesses from multiple locales. Again, this is a dispute over the meaning of contract language. Moreover, the parties can depose witnesses remotely or near their homes—as in any other case in modern times. Only 2% and 3% of contract cases filed in the Northern District of Illinois or the District of Nebraska go to verdict in any event. Ex. F at 9; Ex. G at 9. The distant possibility that some witnesses will need to travel to Illinois for trial cannot overcome the strong presumption in favor of Savista's choice of forum. *See Craik*, 37 F. Supp. 3d at 960.

Further, transfer would only shift inconvenience amongst potential witnesses, and "[t]ransfer is inappropriate if it 'merely transforms an inconvenience for one party into an inconvenience for the other party.'" *Chem. Waste Mgmt., Inc. v. Sims*, 870 F. Supp. 870, 876 (N.D.

Ill. 1994) quoting *Sage Prod., Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D. Ill. 1993). Here, GS Labs merely seeks to shift inconvenience away from itself—not in favor of convenience for "the parties" (plural) and witnesses. Whether this case proceeds in Nebraska or Illinois, some witnesses may have to travel in the unlikely event of a trial (only 2-3% of contract cases). The City of Chicago is a far easier locale to travel to than Nebraska. Additionally, both Savista and GS Labs remain actively registered to do business in Illinois, *i.e.*, there is no meaningful burden of proceeding here. *See* Exs. D & E. Convenience does not support transfer to Nebraska.

Finally, courts consider the interests of justice by weighing the following factors: "(1) the speed at which the case will proceed to trial, (2) the court's familiarity with applicable law, (3) the desirability of resolving controversies in each locale, and (4) the relation of each community to the occurrence at issue." *IMM Holdings, Ltd. v. HK Parts, Inc.*, No. 19 C 6451, 2020 WL 5642942, at *7 (N.D. Ill. Sept. 22, 2020). Each of these factors is neutral or supports Plaintiff Savista's choice of forum in the Northern District of Illinois. GS Labs' arguments to the contrary are flat wrong.

For example, GS Labs compares all civil cases pending for more than three years and the median time for all civil cases from filing to trial between the Northern District of Illinois and the District of Nebraska. Motion at 14. These sweeping data points have little bearing on whether this case should be transferred. Look instead at precise litigation metrics for contract cases. Median time to outcome in contract cases in the Northern District of Illinois is 201 days. Ex. F at 2. The District of Nebraska is 269 days. Ex. G at 2. The Northern District of Illinois is faster. The same is true of dispositive motions in contract cases. Median time for dispositive motions in the Northern District of Illinois: 228 days. Ex. F at 2. The District of Nebraska clocks in late at 245 days. Ex. G at 2. Other metrics are closer, *e.g.*, motions to dismiss at 73 days and 69 days. Ex. F at 16; Ex. G

at 16. But in the Northern District of Illinois, only 54% of contract cases take more than 181 days. Ex. F at 9. The District of Nebraska again trails, with 61% over 181 days. Ex. G at 9.

Dig further and the fallacy of GS Labs' argument about "speed" in Nebraska is plainer. Median time to rule on Defendant-filed motions in the Northern District of Illinois is 52 days, Ex. F at 17, whereas it is 61 days in the District of Nebraska. Ex. G at 17. Median time to rule on Plaintiff-filed motions is 17 days in the Northern District of Illinois. Ex. F at 17. It is twice as long (34 days) in the District of Nebraska. Ex. G at 17. As only 2-3% of contract cases in either district reach verdict, the contract-specific metrics cited above are far more meaningful measures than GS Labs' all-civil case, trial-time approach.

Again, this is a simple dispute based on conflicting views over the interpretation of contract language. This is not the kind of complex case that will take three years to resolve or suffer delays moving from filing to trial. So far, the only delay in obtaining a speedy resolution is GS Labs' present Motion—which attacks jurisdiction and does not even try to reach the substance of Savista's contract claim. But if this case unexpectedly becomes more complex or requires a discovery master, there are more judicial resources in the Northern District of Illinois to accommodate. The Northern District of Illinois has 33 Article III judges and 14 magistrate judges. Ex. F. The District of Nebraska has four Article III judges (two of those on senior status) and three magistrates. Counting just the judges in Omaha where GS Labs claims its principal place of business, there are only three Article III judges (one on senior status) and two magistrates. Ex. G.

Looking at litigation metrics reveals another trend. Lead counsel for GS Labs is a member of the Illinois bar. *See* Ex. H (appearance of Paul Shotkoski on behalf of GS Labs). But we could find only two records of GS Labs' counsel, Fraser Stryker PC LLO, appearing in contract cases in the Northern District of Illinois. S*ee* Ex. I. By comparison, the firm has appeared in 151 contract

14

cases in the District of Nebraska. Ex. G at 12. Bluntly: GS Labs is evidently looking to transfer, not for the convenience of the parties or in service of justice. Rather, GS Labs is looking for a hometown advantage in a judicial district with 11 times fewer judges and longer wait times on motions and case outcomes in contract cases.

The next factor, familiarity with applicable law, is neutral. Delaware law governs the Agreement. Thompson Aff. Ex. A, MSA § 10.7. This Court can apply Delaware law—equally so as a Nebraska court. So, this factor is at least neutral as to transfer. On the last factor, relation to the community, Illinois has a marked interest. GS Labs operated a testing site in the Northern District of Illinois and hired Savista to recover thousands of receivables from patients tested at that site, as well as insurance companies headquartered in Illinois. The case belongs here.

*    *    *

Jurisdiction is proper. GS Labs operated a testing facility in the Northern District of Illinois. GS Labs then hired Savista to reach into Illinois to pursue Illinois residents over thousands of claims for millions of dollars in testing services. Now, GS Labs refuses to pay Savista for its work. GS Labs thus purposely availed itself of the benefits of doing business in Illinois, contracted for performance with a substantial connection to Illinois, and this suit arises therefrom.

Venue is proper. Transfer is inappropriate. GS Labs bears the heightened burden of overcoming deference to Savista's choice of forum by establishing that transfer strongly serves the convenience of the parties and justice. GS Labs fails. The interests of justice and the convenience of the parties do not strongly support transfer to Nebraska—favoring Illinois instead.

## CONCLUSION

For the reasons above, Savista respectfully asks the Court to deny GS Labs' Motion.

Dated: December 8, 2023

Respectfully submitted,

SAVISTA, LLC

By:  */s/ Gabrielle E. Winslow*
        One of Plaintiff's Attorneys

Martin R. Martos (#6303908)
Gabrielle E. Winslow (#6330644)
FOX ROTHSCHILD LLP
321 N. Clark Street, Suite 1600
Chicago, IL 60654
Telephone:     312.517.9200
Facsimile:      312.517.9201
mmartos@foxrothschild.com
gwinslow@foxrothschild.com

## <u>CERTIFICATE OF SERVICE</u>

I, Gabrielle E. Winslow, an attorney, hereby certify that on December 8, 2023, I caused a copy of the foregoing to be served on all counsel of record via the Court's e-filing system.

Dated: December 8, 2023                    By:    */s/ Gabrielle E. Winslow*
                                                               One of Plaintiff's Attorneys